United States District Court
Southern District of Texas
**ENTERED**
February 17, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| M.P. BNF K.S, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:15-CV-233 |
| § | |
| ARANSAS PASS INDEPENDENT § | |
| SCHOOL DISTRICT, § | |
| § | |
| Defendant. § | |

## ORDER GRANTING JUDGMENT ON THE RECORD (D.E. 18) IN PART AND DENYING SUMMARY JUDGMENT (D.E. 19)

M.P., by next friend and parent K.S., initiated complaints under the Individuals with Disabilities Education Improvement Act (IDEA), 20 U.S.C. § 1400, et seq., against the Aransas Pass Independent School District (APISD) by a request for administrative hearing on January 20, 2015. The Texas Education Agency (TEA) Special Education Hearing Officer (SEHO), in Docket No. 145-SE-0115, issued a decision in favor of APISD. M.P. filed this action to appeal that decision. D.E. 1. Before the Court are competing motions for summary judgment supporting and challenging the SEHO decision, respectively. D.E. 18 (APISD's motion), D.E. 19 (M.P.'s motion), D.E. 9, pp. 1-4 (SEHO's decision). For the reasons set out below, the Court GRANTS IN PART APISD's motion (D.E. 18) and DENIES M.P.'s motion (D.E. 19).

1

# FACTS

## A. Prior History and Context

As set out below, this appeal is directed to the SEHO's March 2, 2015 decision, which considered events between December 2, 2014 and February 16, 2015. However, the SEHO took judicial notice of his prior decision. *See* D.E. 9, pp. 256-60. That decision recounts M.P.'s history with APISD and highlights are paraphrased here for purposes of providing context for the decision under review. The Court rejects APISD's apparent position that, by taking judicial notice of the prior *decision*, this Court may consider the entire *record* developed in that proceeding as evidence in the current proceeding. No transcript of testimony or copies of exhibits from the prior proceeding were offered into evidence here and this Court's decision is based only upon the evidence admitted in TEA Docket No. 145-SE-0115.

M.P. had received services from APISD under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq. (Section 504) on the basis of a 2010 diagnosis of autism (Asperger's Disorder). D.E. 9, p; 153. This was done despite APISD's belief that the diagnosis was incorrect as based primarily on the parent's reports and conduct outside of the school setting, leading to a conclusion contrary to APISD's actual experience with M.P. M.P.'s individual education plans (IEPs) set particular goals, but he was placed in the general education setting with the same behavioral interventions applicable to the general population of students. M.P.'s academic performance was successful. Upon a re-evaluation in May 2013, the Admission, Review, and Dismissal (ARD) Committee,

with the parent's participation and concurrence, determined that M.P. no longer required any special education services and he was removed from the program.

M.P.'s parent, complaining of M.P.'s behavior at home, later requested an independent evaluation and chose the evaluator. That evaluation, conducted December 2013 to January 2014, resulted in a recommendation that M.P. did not need special education services but might benefit from services under Section 504. The ARD Committee met to consider that evaluation. The parent, while provided an opportunity to participate and submit additional matters for consideration, did not do so. The ARD Committee determined that M.P. did not need special education services.

The parent initiated an administrative review of that decision on February 24, 2014, which was heard on December 1, 2014, under TEA Docket No. 163-SE-0214. M.P.'s complaints included failure to provide appropriate support services, failure to recognize the educational eligibilities and services guaranteed by IDEA, failure to provide a safe environment for the implementation of the student's educational program, failure to provide a free appropriate public education (FAPE), and inappropriate discipline by the district.

The parent secured yet another evaluation of M.P. in June 2014 by a privately hired service. The evaluator determined that M.P. had a mood disorder, a depressive disorder with psychotic features, and Attention Deficit Hyperactivity Disorder (ADHD), but did not express a definitive opinion on special education eligibility. After the parent admitted M.P. to a behavioral hospital for the week of November 3-11, 2014, the hospital reported one day of agitated behavior but no psychotic symptoms and no other problems.

Included in the record of the December 1, 2014 hearing was evidence that M.P.'s educational achievement had been adequate, with M.P. never failing a class and having passed all but one recent state assessment area. The SEHO observed that M.P. had exhibited behavioral problems in the fall of 2014, including disruptive and threatening conduct and two instances of attempted elopement (with only one being successful). Nevertheless, APISD interventions had been appropriate and effective.

After reviewing this history and making the findings recounted here, the SEHO determined that M.P. had not satisfied his high burden of showing eligibility for special education services. D.E. 9, pp. 256-60. M.P. did not appeal this December 15, 2014 decision.

B.   **Current Proceeding.**

While still within the 90-day time period for appeal[1] of the prior decision, M.P.'s parent initiated a new administrative proceeding with a request for hearing on January 20, 2015. In TEA Docket No. 145-SE-0115, M.P. claimed to be eligible for special education services and APISD's failure to so identify him violated the "child find" requirements of the law. He also complained of denial of a FAPE, improper discipline, improper assignment to behavioral placements, and entitlement to compensatory education services. The SEHO took judicial notice of his prior decision and restricted consideration of evidence in the new action to events occurring between December 1, 2014, the date of the hearing in the prior case, and February 16, 2015, the date of the new

---

[1] 34 C.F.R. § 300.516(b); 19 Tex. Adm. Code § 89.1185.

4

hearing. D.E. 9, pp. 1, 303-89. This Court's independent review of the evidence reflects the following:

After December 1, 2014, M.P. had dramatically increasing behavioral referrals, with numerous in-school and out-of-school suspensions, triggering M.P.'s eventual Disciplinary Alternative Education Placement (DAEP) right before the winter break, to be continued for 45 days. D.E. 9, pp. 251-52. The parent testified that M.P. had been withdrawing and regressing since December 1 and that she feared that M.P. might fail 6th grade due to low grades. D.E. 9, p. 322. But she did not provide any link between M.P.'s alleged psychological diagnoses and any inability to learn in an ordinary classroom setting. Her personal notes actually reflect that M.P. liked DAEP and was adjusting well there. *Id.*, pp. 231-34.

M.P. and his parent have received Mental Health and Mental Retardation (MHMR) services through the Coastal Plains Community Center at least once a month the entire time that M.P. has been educated through APISD. Those services are for coordination, respite service, and advocacy. D.E. 9, p. 335. While the counselor, Anna Belia Garcia, testified that she believed DAEP was an improper placement for M.P. as a child with Asberger's Syndrome, she admitted that she had no qualifications to provide any expert opinion regarding medical or educational diagnoses and had not observed M.P. in the classroom setting. *Id.*, p. 339-40. Moreover, her notes corroborate the parent's observation that M.P. liked the DAEP placement and was doing well there. *Id.*, pp. 177 (December 22, 2014), 180 (January 8, 2015). Nothing in the MHMR progress notes shows M.P.'s DAEP causing adverse consequences to his education.

M.P.'s psychiatrist, James P. McGovern, M.D., met with him on December 12, 2014, but only for the purpose of managing his medication and no new evaluation was performed and he offered no new opinions regarding M.P.'s psychological health and educational placement. D.E. 9, pp. 150-52, 325-33. General comments recorded in his progress notes indicate that M.P.'s psychiatric complaints were mild and improving. *Id*., p. 150. He testified that he had not observed M.P. in a school setting or with peers after December 1, 2014. *Id*., pp. 325-33. M.P. was "doing okay" at that visit and the doctor was not aware of any moodiness at that time. *Id*., pp. 326, 328. While he testified that M.P. "would" have difficulty learning and maintaining interpersonal relationships, he did not demonstrate how APISD's efforts were inappropriate or how M.P.'s individual situation required different educational methods.

His psychologist, Dr. Sam S. Hill, III, opined that M.P. has depression with psychotic features and that he should qualify for special education on the basis of being emotionally disturbed, with cognitive learning problems in spelling and math. D.E. 9, pp. 344-45. While his report was dated within the appropriate time frame, the evidence shows that it is based on an evaluation that occurred prior to December 1, 2014, and information supplied only by the parent after that date. *Id*., pp. 196-204, 347. The psychologist had never observed M.P. in an educational setting or with peers. *Id*., p. 347. Neither had he spoken with any of M.P.'s teachers or administrators, although he testified that he had reached out to them for information and assessments. *Id*., pp. 347-49. When he testified, he was not aware that M.P. had been moved to DAEP. *Id*., p. 350. Dr. Hill

6

did not provide any evidence of how M.P.'s psychological condition was impacting his education or how his education would benefit from special education services.

APISD's campus administrator, Martha Rose, testified that, prior to the DAEP, M.P. was "just a typical sixth-grade student transitioning to a secondary type campus," describing him as very social with his own little group of friends. D.E. 9, p. 352. She had not been contacted by the psychologist and was not familiar with his name and would not describe M.P. as "anxious." *Id*., p. 353. She further testified about the DAEP facility, which accommodates about 38 students (not all of whom are there for disciplinary reasons) and four teachers, using a self-paced instructional computer program, Edgenuity. She admitted that it is not uncommon for some students' grades to drop during the transition to that method of teaching. *Id*., pp. 353-55. Principal Rose considers M.P. to be successful academically and to be responsive to ordinary behavioral interventions. *Id*., p. 356. M.P. was still making educational progress and passing all courses. D.E. 9, pp. 241-43.

APISD's Director of Special Education, Chris Johnson, testified that no new ARD Committee meeting was convened for M.P. during the relevant period because the parent had not submitted any new evaluation data and insufficient time had elapsed since the previous SEHO decision, which found that M.P. did not require special education services. D.E. 9, pp. 366-68. Based on her experience and the records related to M.P., she testified that M.P. did not require special education services. And while APISD had offered evaluation for services under Section 504 on multiple occasions, the parent had

declined those offers. *Id*., p. 368. She did not have the documentation necessary to determine whether M.P. would, in fact, qualify for Section 504 services. *Id*., p. 369.

M.P.'s first teacher in DAEP, Naomi Freeze, testified that M.P.'s behavior had been good and that he did well with his academic performance, although she questioned his effort. D.E. 9, pp. 375-76. She also had observed no problems with his interaction with other students. *Id*., p. 377. On cross-examination, however, she acknowledged that M.P. had threatened to stab a student with a pencil and had eloped, causing her to notify the parent that the S.R.O. (police officer) might have to be called, as that is the standard response for a student who leaves campus during the school day. *Id.*, pp. 381-83.

The SEHO issued his opinion on March 2, 2015, again concluding that M.P. did not satisfy his burden to show entitlement to special education services. That decision is now appealed to this Court. D.E. 1.

## DISCUSSION

M.P.'s Complaint seeks relief as (a) an eligible student with a disability under the IDEA, (b) an "otherwise qualified handicapped person" under Section 504, and (c) a disabled person under the Americans with Disabilities Act (ADA) § 12131. He further seeks protection under Section 504, ADA, and the Civil Rights Act, 42 U.S.C. § 1983, based on discrimination related to his disability or handicap. APISD seeks judgment on the administrative record that M.P. has failed to satisfy his burden of proof to show that he is disabled or handicapped and thus entitled to relief under the IDEA. M.P. seeks summary judgment that APISD has violated the child find and related provisions of the IDEA.

A. **IDEA Claim**

1. **Scope of Review**

There is nothing in this record to indicate that M.P. appealed the December 15, 2014 SEHO IDEA decision in state or federal court; the time for doing so has passed. In the current proceeding, M.P. attempts to base his status on diagnoses spanning from June 18, 2010 to February 3, 2015 (addressing evaluations conducted prior to December 1, 2014) and complains of events—particularly disciplinary actions—from December 3, 2014 to May 11, 2015, that have allegedly impaired his education. His Complaint was filed on May 28, 2015. D.E. 1.

On August 19, 2015, the Court heard and granted APISD's "Motion to Limit the Scope of Trial" (D.E. 14), limiting this Court's review of the IDEA claims to the incidents and evidence relevant to the time period of December 2, 2014 (the date following the first administrative hearing, which was not appealed) and February 16, 2015 (the date of the hearing in the administrative proceeding subject to review). On February 5, 2016, the Court heard and denied M.P.'s "Motion to Reconsider its [sic] Request to Submit Additional Evidence" (D.E. 20), again rejecting the expansion of the record for his IDEA challenge. Thus, with respect to the IDEA claim only,[2] this Court is concerned exclusively with the time period between the two hearings in which M.P.'s requests for special education services were denied. This Court bases its decision on the record that was submitted to the SEHO in TEA Docket No. 145-SE-0115.

2. **Standard of Review**

---

[2] Neither motion addressed whether the administrative record could be supplemented for purposes of the Section 504, ADA, and § 1983 claims.

9

To the extent that this is an enforcement action under the IDEA, the Court must observe specialized principles governing burden of proof and standard of review. Regardless of which party prevailed at the TEA level, the burden of proof is on the party challenging the school district's decision, in this case, the Plaintiff, M.P. *See Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 347 (5th Cir. 2000), *cert. denied*, 531 U.S. 817 (2000). In other words, the IDEA creates a presumption in favor of the school district, which survives the Special Education Hearing Officer's determinations. *White v. Ascension Parish Sch. Bd.*, 343 F.3d 373, 377 (5th Cir. 2003).

The court's review is "virtually de novo." *Adam J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 808 (5th Cir. 2003) (quoting *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 131 (5th Cir. 1993)). Although "due weight" is to be given to the hearing officer's findings, those findings are not conclusive and the court "must ultimately reach an independent decision based on a preponderance of the evidence." *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d at 347 (quoting *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997), *cert. denied*, 522 U.S. 1047 (1998)); *see also Teague*, 999 F.2d at 131. The district court should not defer to the hearing officer's findings when its own review of the evidence indicates that the hearing officer erroneously assessed the facts or erroneously applied the law to the facts. *Teague*, 999 F.2d at 131.

Last, "[t]he Court's task is not to second-guess state and local policy decisions." *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1048 (5th Cir. 1989). Rather, it is to

determine whether state and local school officials have complied with the IDEA. *Id*. This is a mixed question of law and fact. *Cypress-Fairbanks*, 118 F.3d at 252.

### 3. Discussion

The first issue here is whether M.P. is eligible—as defined by the IDEA—for special education services. In order for a child to be a "child with a disability" under the IDEA, the child must (1) have a qualifying disability and (2) by reason thereof, need special education and related services. *See* 20 U.S.C. § 1401(3)(A). M.P. clearly relies on multiple psychiatric and psychological efforts to diagnose him with autism/Asperger's Syndrome and/or emotional disturbances as conclusively satisfying the first prong of the test. APISD, calling up evidence—primarily outside this record—casts doubt on those diagnoses or offers controverting opinions, contending that the SEHO determined that M.P. did not have a qualifying disability.

The Court does not read either of the two SEHO opinions as making a fact finding or conclusion of law on the isolated question posed by the first prong of the test. Rather, the SEHO noted the expert opinions claiming that M.P. suffered from a qualifying disability, and then made global findings that M.P. had not satisfied his burden of proof and, more specifically, "did not prove that the student's educational difficulties were sufficient to warrant special education and related services." D.E. 9, pp. 4, 259-60. This conclusion arguably addresses both prongs. Because the Court finds the second prong determinative, we assume without deciding that M.P. satisfied the first prong for purposes of his IDEA claim.

11

The second prong requires evidence that provides a nexus between the qualifying disability and the need for special education services, considering the unique facts and circumstances of the case.  *See Alvin Indep. Sch. Dist. v. A.D.*, 503 F.3d 378, 383 (5th Cir. 2007).  The question of educational need involves consultation of "a variety of sources, including aptitude and achievement tests, parent input, and teacher recommendations, as well as information about the child's physical condition, social or cultural background, and adaptive behavior . . . ." 34 C.F.R. § 300.306(c)(1)(i).

Given M.P.'s prior academic success and the fact that both APISD and the parent concurred in 2013 that M.P. did not require special education services, the question is whether his current academic and behavioral difficulties are related to his alleged qualifying disability, requiring intervention to improve learning either from an instructional or environmental standpoint.  The evidence of record does not provide that nexus.  Prior special education services appeared to be roughly commensurate with the efforts made for the general population, and M.P. was abundantly successful.  This history indicates that M.P. is sufficiently capable of academic achievement.

Nothing in the evidence explains any reason for M.P.'s accentuated behavioral difficulties or academic decline after December 1, 2014.  His psychiatrist notes minimal problems, which in the doctor's estimation appear to be improving.  His psychologist, while offering a label, did not begin to explain why M.P.'s behavior and academic achievement was faltering at this time or what special education measures would counteract the problem.  In fact, he had not conducted any independent evaluation of M.P. or investigated M.P.'s home or school activities during the relevant time period.

Instead, he consulted only with the parent and did not attempt to corroborate her opinions or complaints or rule out other causes. On the other hand, nothing in the evidence attributes M.P.'s apparent decline to factors outside the school setting or apart from a qualifying disability, such as particular home or family dynamics or run-of-the-mill adolescent anger or testing of boundaries.

In the complete absence of persuasive evidence of the nexus between disability and special education needs, the Court—like the SEHO—can only conclude that M.P. has failed to meet his burden of proof that his educational difficulties warranted any special education and related services. The Court GRANTS APISD's motion (D.E. 18) and DISMISSES M.P.'s claims against APISD pursuant to the IDEA only. For the same reasons, the Court DENIES M.P.'s motion (D.E. 19).

**B. Discrimination Claims (Section 504, ADA, and § 1983)**

M.P. has also stated claims against APISD for discrimination under Section 504, ADA, and § 1983. D.E. 1. Even if the Court had rested its IDEA decision on an adverse finding on the first prong of eligibility for special education services—that M.P. did not have a qualifying disability or handicap, that decision may not be determinative of eligibility for relief under the anti-discrimination statutes. The latter claims may not impose the same standard of review as the IDEA and there is some authority that this Court would not be limited to the administrative record or be required to apply any deference to SEHO findings or conclusions.

Without either party specifically addressing these issues regarding the scope and standard of review, and without any specific treatment of those claims in the motions, the

13

Court must determine whether the discrimination claims were intentionally waived. The Court ORDERS M.P. to file on or before the expiration of seven (7) days from the date of this Order a statement of whether M.P. desires that the Court proceed on the discrimination claims. In the absence of such a statement, the Court may dismiss those claims for want of prosecution without further notice. If M.P. files such a statement, the parties are ORDERED to meet and confer regarding a joint discovery plan and scheduling order.

## CONCLUSION

For the reasons set out above, the Court GRANTS APISD's motion for judgment (D.E. 18) and DISMISSES M.P.'s claims pursuant to the IDEA only. The Court reserves the claims under Section 504, ADA, and § 1983 for further consideration. The Court DENIES M.P.'s motion for summary judgment (D.E. 19). The Court ORDERS M.P. to file his statement of intent to proceed on his claims under Section 504, ADA, and § 1983 on or before the expiration of seven (7) days from the date of this Order or the Court may dismiss them for want of prosecution.

ORDERED this 17th day of February, 2016.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE